**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SHARON RITCHIE,** | ) | **CASE NO.  1:07CV0991** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | <u>**OPINION AND ORDER**</u> |
| | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**CHRISTOPHER A. BOYKO, J.**</u>:

This matter comes before the Court upon Defendant's Objection to the Report and

Recommended Decision of the Magistrate Judge, recommending the Defendant's final

determination be reversed and remanded to the Agency for further proceedings.  For the

following reasons, the Court SUSTAINS Defendant's Objections and REJECTS the Report and

Recommend Decision, but nonetheless, based upon Plaintiff's meritorious argument, not

addressed by the Magistrate Judge, the Defendant's final determination is REVERSED and

REMANDED to the Agency for further proceedings.

**I. FACTS**

On October 15, 2003, Plaintiff, Sharon Ritchie ("Ritchie"), filed an application for a

period of disability and Disability Insurance Benefits pursuant to the Social Security Act,

alleging disability beginning February 3, 2002.  Ritchie was 34 years old on the alleged

disability onset date.  Although Ritchie has previously held jobs, including as a teacher's aide,

material handler, and laboratory technician, she testified that she has been unemployed since her alleged disability onset date of February 3, 2002.

Ritchie suffers from a number of medical problems, including headaches, herniated disc, cervical radiculpathy, and asthma, as well as other conditions of varying severity peppered throughout the record.  In addition, Ritchie is five feet, three inches tall and weighs 260 pounds, qualifying her as morbidly obese.  An exhaustive review of Ritchie's numerous health conditions is unnecessary.  For the purposes of this case, it is sufficient to note that Ritchie's disability claim is based in large part on her diagnosis of degenerative disc disease and the attendant cervical radiculpathy.

On February 3, 2002, Ritchie was seen in an emergency room for complaints of pain in the upper back and left shoulder with radiating pain down the left arm.  X-rays revealed evidence of degenerative disc disease and numerous  physicians have since confirmed that diagnosis. Importantly for purposes of this case, on June 19, 2002, Ritchie saw Dr. Albert L. Timperman, M.D. ("Dr. Timperman"), for an evaluation of herniated cervical discs at C5-7.  At that time, Dr. Timperman reported that Ritchie had full range of cervical spine and shoulder joint motion. Subsequent observations by other physicians between October 16, 2003 and January 3, 2006, including Ritchie's family physician, Dr. Christopher Brown, M.D. ("Dr. Brown"), revealed limited range of motion in Ritchie's cervical spine.  Dr. Brown saw Ritchie on an ongoing basis, according to the record at least between 2000 and 2006.

Ritchie's claim for Disability Insurance Benefits was initially denied on December 26, 2003, and upon reconsideration on March 26, 2004.  On March 30, 2004, Ritchie filed a request for rehearing and on February 23, 2006, a hearing was conducted before an Administrative Law

Judge ("ALJ").  The ALJ found: Ritchie met the insured status requirements of the Social Security Act; she had not engaged in substantial gainful activity since February 3, 2002; and she had a severe combination of impairments, including headaches, herniated disc, cervical radiculopathy, and asthma.  While the ALJ noted that Ritchie "does have cervical radiculopathy with known cervical degenerative disc disease and degenerative joint disease," the ALJ found that Ritchie's impairment did not meet or equal one of the categorically listed impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Specifically, the ALJ found that Listing 1.04 did not apply despite Ritchie's cervical degenerative disc disease, because Dr. Timperman had observed that she had full range of spinal motion.  The ALJ did not mention the observations of limited spinal motion reported by Dr. Brown and others.

Because the ALJ found that Ritchie did not meet a listing in Appendix 1, he continued his analysis by determining Ritchie's residual functional capacity on the basis of a residual functional capacity report by Dr. Brown.  The ALJ found that, based on Dr. Brown's report, Ritchie was capable of "light work."  The ALJ used that determination and Dr. Brown's report itself as the basis for questioning a vocational expert.  Based on the vocational expert's testimony, the ALJ found that Ritchie was capable of performing several jobs that exist in significant numbers in the national economy and thus, on July 27, 2006, the ALJ concluded that Ritchie was not disabled.  On February 2, 2007, the Appeals Council denied Ritchie's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security under 20 C.F.R. §§ 404.855(b), 404.981, and 422.210(a).

On April 5, 2007, Ritchie filed a petition for judicial review in district court pursuant to 42 U.S.C. § 405(g).  The case was assigned to a Magistrate Judge ("MJ") and on July 28, 2008,

-3-

the MJ made his Report and Recommended Decision.  The MJ recommended reversal and remand, citing conflicts in the medical evidence and finding the ALJ erred by not availing himself of expert medical testimony to assist the ALJ in making a determination of Ritchie's residual functional capacity and the credibility of her subjective complaints in light of the objective medical evidence.  In addition, the MJ found the ALJ did not consider Ritchie's obesity and its impact on her medical conditions, and so the MJ found expert medical testimony should address that issue.  On August 5, 2008, Defendant filed an Objection to Magistrate Judge's Report & Recommendation, arguing that the MJ's decision is erroneous.

## II. LAW AND ANALYSIS

### A.  Standard of Review

The findings of the ALJ in a Social Security hearing are conclusive, if supported by substantial evidence.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*; *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).  The Sixth Circuit has also held that "[t]he findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  "This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference."  *Id.* at 772-73.  Thus, the ALJ's decision "cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Foster*, 279 F.3d at 353.  The Court will therefore "not

try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility."
*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (quotation omitted).


## B.  Defendant's Objections to the Magistrate Judge's Report and Recommendation

Defendant raises several objections to the Report and Recommended Decision of the Magistrate.  As set out below, Defendant's objections have merit and thus, the Court sustains those objections and rejects the Magistrate's Report and Recommended Decision.

### 1.  Magistrate's Application of the Substantial Evidence Standard

As previously discussed, in federal district court, the applicable standard of review for a Social Security claimant's challenge to an ALJ's decision is whether the ALJ's decision is supported by "substantial evidence."  (*See supra* § II.A.).  Defendant's first objection to the Magistrate's Report and Recommended Decision is the MJ's failure to apply the substantial evidence standard.  (Def.'s Objection Magistrate Judge's Report & Recommendation at 2-4).

Defendant correctly notes that the Magistrate's Report and Recommended Decision makes no mention of the applicable standard of review and cites not a single case in support of the decision the MJ reached.  As set out below (*see infra* § II.B.2. & 3.), the MJ instead, *sua sponte,* based his recommendation for reversal and remand on considerations not raised by the parties and which do not conform to the applicable legal standards.  Thus, the Court sustains Defendant's objection, that the MJ erroneously failed to apply the "substantial evidence" standard.

### 2.  ALJ's Need to Consult a Medical Expert

The MJ based his recommendation for reversal and remand upon

a perceived need for the ALJ to "avail himself of the benefit of testimony of a qualified medical expert on the issues of the plaintiff's residual functional capacity and the credibility of her subjective complaints in light of the objective medical evidence."  (Report & Recommended Decision at 4-6).  Essentially, the MJ found that there was conflicting evidence about the severity of Ritchie's condition and that the ALJ needed to consult a medical expert in determining Ritchie's residual functional capacity.  However, the MJ's recommendation that the ALJ be required to consult a medical expert does not comport with existing law.

First, the MJ's finding that this case was too complicated for the ALJ, due to conflicting medical evidence, is not supported by law.  As the Supreme Court has made clear, a Social Security case involving conflicting evidence is a "not uncommon situation."  *Richardson*, 402 U.S. at 399.  Nonetheless, "[t]he trier of fact has the duty to resolve that conflict."  *Id.*  By law, the trier of fact in a Social Security benefits determination is the ALJ.  *See* 42 U.S.C. § 423(d)(5)(A) (providing "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 404.1546(c) (providing "the administrative law judge...is responsible for assessing your residual functional capacity."); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (quoting 20 C.F.R. § 416.920(a)(4)(iv)) (stating "the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of [her] residual functional capacity.'").

When evaluating the evidence, "[a]n ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary."  *Foster*, 279 F.3d at 355 (citing 20 C.F.R § 404.1517; 20 C.F.R. § 416.917).  "Discretion" is defined as "the power of free

-6-

decision-making." BLACK'S LAW DICTIONARY 8th ed. 2004.  An ALJ does not abuse his discretion regarding the need for expert testimony if there is "already sufficient testimony on [claimant's] impairments in the record for the ALJ to evaluate [claimant's] . . . residual functional capacity." *Foster*, 279 F.3d at 356.

The Court's "role is not to resolve conflicting evidence in the record or to examine the credibility of the claimant's testimony." *Foster*, 279 F.3d at 353.  Rather, the Court must affirm the ALJ's ruling so long as it is supported by "substantial evidence," and may not reverse the ALJ "merely because there exists in the record substantial evidence to support a different conclusion." *Richardson*, 402 U.S. at 401; *Buxton*, 246 F.3d at 772.  Here, Ritchie's family physician, Dr. Brown, completed a form evaluating her residual functional capacity in great detail.  (Tr. at 167).  The ALJ was aware of Dr. Brown's evaluation and specifically adopted it as the basis of his questioning of the vocational expert.  (Tr. at 18-19, 278-80).  The ALJ's adoption of a report by Ritchie's own physician in determining her residual functional capacity is "more than a mere scintilla" of evidence and is enough that a "reasonable mind might accept [it] as adequate to support [the ALJ's] conclusion." *Richardson*, 402 U.S. at 401.  Thus, the ALJ's evaluation of Ritchie's residual functional capacity is supported by substantial evidence.

Ritchie correctly notes that where medical reports are purely diagnostic, "an administrative law judge may not draw upon his own inferences from medical reports." *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir. 1975).  However, Dr. Brown's report is not "purely diagnostic," but instead is a thoroughly detailed account of exactly what Dr. Brown determined Ritchie's capabilities were in light of her medical conditions.  The ALJ was not required to draw any inferences because Dr. Brown explicitly set out Ritchie's limitations and capabilities in the

-7-

report.  Thus, the ALJ did not go beyond his assigned role as trier of fact and did not impermissibly draw his own inferences from diagnostic medical reports.

Because Dr. Brown's report was already in the record and provided sufficient testimony for the ALJ to evaluate Ritchie's residual functional capacity, the ALJ did not abuse his discretion by declining to avail himself of further expert testimony.  Moreover, neither party, before the ALJ nor before the MJ, suggested that further expert medical testimony was needed for the ALJ to resolve the conflicting medical evidence.  "The rule that points not argued will not be considered is more than just a prudential rule of convenience; its observance, at least in the vast majority of cases, distinguishes our adversary system of justice from the inquisitorial one." *U.S. v. Burke*, 504 U.S. 229, 246 (1992) (Scalia, J., concurring).  The MJ's decision to *sua sponte* raise the issue of the need for expert testimony is then doubly inappropriate.  Therefore, the Court sustains Defendant's objection and rejects the MJ's recommendation of reversal and remand for the ALJ to consult further expert medical testimony.

### 3.  Magistrate's *Sua Sponte* Raising the Issue of Ritchie's Obesity

The Magistrate's Report and Recommended Decision comments that "[a]lthough the plaintiff did not allude to it, she is morbidly obese."  (Report & Recommended Decision at 2 n.1).  Additionally, upon finding a need for the ALJ to consult a medical expert, the MJ noted, "This Court also believes that such testimony should address the question of whether the plaintiff's obesity impacts upon those factors, which was not considered by the ALJ."  *Id.* at 6 n.3.  As Defendant correctly argues, the MJ's *sua sponte* frolic into issues of Ritchie's obesity is improper for two reasons.

First, the issue of Ritchie's obesity was not raised by either party, neither before the ALJ

-8-

nor before the MJ.  A reviewing court "will not review the ALJ's decision with respect to issues not properly raised at the administrative level"; such issues are deemed waived.  *Maple v. Apfel,* 14 Fed. Appx. 525, 537 (6th Cir. 2001); *Wells v. Apfel,* No. 99-5548, 2000 WL 1562845, at *6 (6th Cir. 2000).  Likewise, issues not raised before the district court are deemed waived.  *Young v. Sec. of Health & Human Servs.*, 925 F.2d 146, 149 (6th Cir. 1990).  Therefore, the issues of Ritchie's obesity and its impact on her residual functional capacity have been waived and are not subject to review by the MJ nor this Court.

Second, the MJ's contention that Ritchie's obesity was not considered is incompatible with the record before him.  In his decision, the ALJ wrote, "the medical record shows that the claimant is obese . . . however, this does not limit the claimant in her activities of daily living." (Tr. at 19).  That finding is consistent with the medical testimony before the ALJ.  The ALJ credited the reports of Dr. Timperman and Dr. Brown, both of whose reports show they were well aware of Ritchie's obesity.  (Tr. at 134, 171).  "[T]he ALJ does not need to make specific mention of obesity if he credits an expert's report that considers obesity."  *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 412 (6th Cir. 2006).  Here, the ALJ made both specific mention of Ritchie's obesity as well as giving credit to expert's reports that considered her obesity.  The ALJ even inquired of Ritchie at the hearing about her obesity, to which she responded that according to her doctors "the weight [loss] would help, but it wasn't the cause of the problem."  (Tr. at 260).

Therefore, the MJ's decision to *sua sponte* raise the issue of Ritchie's obesity was legally improper given the waiver of that issue by Ritchie, and moreover, was factually inconsistent with the record before him.  Therefore, the Court sustains Defendant's objection and rejects the MJ's recommendation regarding the issue of Ritchie's obesity.

-9-

## C.  ALJ's Residual Functional Capacity Determination

As already explained (*See* § II.B.2.), the ALJ's determination of Ritchie's residual functional capacity was based on the ALJ's direct adoption of Dr. Brown's residual functional capacity evaluation.  (Tr. at 18-19, 22, 278-80).  The ALJ then used that determination as the basis of questioning the vocational expert.  *Id.* at 278-80.  This alone is sufficient to demonstrate that the ALJ's residual functional capacity determination and the vocational expert's testimony about Ritchie's employment capabilities, based on that determination, are supported by substantial evidence.  The vocational expert was not asked to evaluate what work Ritchie could still perform based on a broad categorization of "light work," but rather was asked to evaluate her employment capabilities based on the specific findings of Dr. Brown's report.  *Id.*

Moreover, the ALJ's finding that Ritchie has the residual functional capacity to perform light work is independently supported by Dr. Brown's report.  Ritchie argues that the ALJ's determination is internally inconsistent because the ALJ adopted Dr. Brown's report but that report does not support a finding that Ritchie is capable of light work.  (Pl.'s Br. Merits at 18-19).  That argument is without merit.

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or *when it involves sitting most of the time with some pushing and pulling of arm or leg controls*.

20 C.F.R. § 404.1567(b) (emphasis added).  Ritchie is correct that Dr. Brown's report limits her to only occasional lifting and three hours per day of standing or walking.  (Tr. at 167).  However, Dr. Brown determined that Ritchie could sit for eight hours a day and was capable of operating foot controls with one or both feet.  *Id.*  Granted, "[t]o be considered capable of performing a full

-10-

or wide range of light work, [claimant] must have the ability to do substantially all of these [listed] activities." 20 C.F.R. § 404.1567(b).  Nonetheless, the vocational expert testified that even given Ritchie's *limited* range of light work, there were several jobs in the national economy under the category of "light work" which she could still perform.  (Tr. at 275-82).  Although Ritchie may not be capable of a *full* or *wide* range of light work, the ALJ's determination that she is capable of some light work is consistent with Dr. Brown's report and is thus supported by substantial evidence. Therefore, the Court holds the ALJ's determination of Ritchie's residual functional capacity was based on substantial evidence and is thus affirmed.

### D.  ALJ's Failure to Provide "Good Reasons" for Weight Given to the Opinion of Ritchie's Treating Source

As already discussed, the ALJ's finding with regard to Ritchie's residual functional capacity is supported by substantial evidence and the MJ's stated basis for reversal and remand is not founded on existing law.  However, Ritchie raised a meritorious argument before the MJ, which the MJ did not address: the ALJ's finding that Ritchie did not meet the criteria of Listing 1.04(A) for Disorders of the Spine conflicts with the medical evidence from Ritchie's treating source and the ALJ failed to provide "good reasons" for the weight accorded to that evidence. (Pl.'s Br. Merits at 13-15).  Ritchie continues to raise the applicability of Listing 1.04(A) before this Court.  (Pl.'s Br. Op. Def.'s Objections Magistrate Judge's Report & Recommendations at 4).  Because the ALJ failed to provide "good reasons" for the weight accorded to the supporting evidence from Ritchie's treating source, the Court reverses and remands to the ALJ so those "good reasons" can be provided.

In order to determine whether or not a Social Security claimant is disabled, the ALJ follows a five-step sequential analysis:

-11-

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (See paragraph (b) of this section.)

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (See paragraph (c) of this section.)

(iii) At the third step, we also consider the medical severity of your impairment(s). *If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.* (See paragraph (d) of this section.)

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (See paragraph (f) of this section and § 404.1560(b).)

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. (See paragraph (g) of this section and § 404.1560(c).)

20 C.F.R. § 404.1520(a)(4) (emphasis added).  At each step, if a determination is made that the claimant is or is not disabled, then the analysis ends and the ALJ does not continue on to the next step.  *Id.*; *Williams v. Apfel*, 204 F.3d 48, 49 (2nd Cir. 1999).[1]  Importantly, the ALJ does not determine a claimant's residual functional capacity until between steps three and four because residual functional capacity is only considered at steps four and five of the analysis.  20 C.F.R. § 404.1520(a)(4).  If the claimant is found to meet an impairment listed in Appendix 1 at the third step of the analysis, then the determination of disability is conclusive and the ALJ does not go on

_____

[1] To clarify, a claimant can be found "not disabled" at steps 1, 2, 4, or 5; whereas a claimant can be found "disabled" at steps 3 or 5.  *See* 20 C.F.R. § 404.1520(a)(4).

-12-

to determine and consider claimant's residual functional capacity.  *See* 20 C.F.R. § 404.1520(d).

Ritchie argued and continues to argue that she meets the impairment at Listing 1.04(A) of the Appendix, which provides in pertinent part:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, *degenerative disc disease*, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, *limitation of motion of the spine*, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1 (emphasis added).  If the ALJ had determined that Ritchie met the criteria of Listing 1.04(A), then the analysis would have ended and the ALJ would be required to find that Ritchie was disabled.  However, "[i]n order for a claimant's condition to equate with a listed impairment, the claimant's condition must manifest all of the specified medical criteria for such impairment."  *Mitchell v. Astrue,* No. 08-40-HRW, 2009 WL 29463, at *3 (E.D. Ky. Jan. 5, 2009) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

At step three of the five-step analysis, the ALJ considered the applicability of Listing 1.04(A), noting that Ritchie "does have cervical radiculopathy with known cervical degenerative disc disease and degenerative joint disease."  (Tr. at 19).  But the ALJ then concluded that "[t]his would not satisfy Listing 1.04" because "Dr. Timperman reported that the claimant had full range of cervical spine and shoulder joint motion."  *Id.* (citing Tr. at 134).  Hence, the ALJ implicitly based his determination that Ritchie did not meet Listing 1.04(A) on a finding that Ritchie did not meet *all* of the medical criteria for the impairment because she did not present "limitation of the motion of the spine."

-13-

Ritchie disputes the ALJ's conclusion that she does not meet Listing 1.04(A) and points to numerous references to limited spinal motion in the record before the ALJ.  (Pl.'s Br. Merits at 14) (citing Tr. at 125, 138, 140, 149, 168, 169, 213, 220, 237).  The report by Dr. Timperman cited by the ALJ dates from June 19, 2002.  (Tr. at 133-35).  In contrast, the reports indicating limited spinal motion cited by Ritchie span the time period from October 16, 2003 to January 3, 2006, and include reports by a doctor practicing with Dr. Timperman at Surgical Neurology of North Central Ohio, Dr. Stretanski (Tr. at 125); Ritchie's family physician, Dr. Brown (Tr. at 138, 140, 149, 168, 169, 213, 220); and a physical therapist at MedCentral, Lee Parrish (Tr. at 237).

Were it the extent of Ritchie's argument that the ALJ's determination, that she did not meet Listing 1.04(A), was not based on substantial evidence, she would fail.  Again, the evidence relied on by the ALJ need only be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401; *Foster*, 279 F.3d at 353.  The Court may not reverse the ALJ simply because "there exists in the record substantial evidence to support a different conclusion."  *Buxton*, 246 F.3d at 772.  Dr. Timperman observed that Ritchie had "full range of cervical spine and shoulder joint motion."  (Tr. at 134).  This provides substantial evidence for the ALJ's conclusion that Ritchie did not have "limited motion of the spine" as required to meet Listing 1.04(A) and the existence of contrary evidence does not, in and of itself, provide a basis to reverse the ALJ's findings.

However, in addition to her argument that the ALJ's decision is not supported by substantial evidence, Ritchie argues that the ALJ did not base his decision on the record as a whole and did not provide "good reasons" for the weight accorded to the opinion of Ritchie's

-14-

treating physician.  (Pl.'s Br. Merits at 11-15).  Despite the existence of substantial evidence for the ALJ's decision regarding whether Ritchie met the criteria for Listing 1.04(A), the ALJ's failure to provide "good reasons" for the weight he accorded Dr. Brown's opinion is a basis for reversal and remand.

  "Substantiality of the evidence must be based upon the record taken as a whole." *Barney v. Sec'y of Health and Human Servs.*, 743 F.2d 448, 449 (6th Cir. 1984).  The "ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."  *Simon v. Astrue*, No. 3:07CV0081, 2008 WL 4186324, at *7 (S.D. Ohio Sept. 3, 2008); *accord Armstrong v. Astrue*, No. 3:07CV0216, 2008 WL 3836602, at *8 (S.D. Ohio Aug. 15, 2008 (finding that ALJ erred by "selecting an isolated note from [one doctor's] report to reject or minimize the significance of Plaintiff's history of chronic low grade fevers" while failing to evaluate another doctor's report "under the well-known factors, supportability, consistency, specialization, etc."); *Wilt v. Astrue*, No. 3:06CV0125, 2008 WL 2783497, at *7 (S.D. Ohio July 15, 2008); *Williman v. Astrue*, No. 3:07CV059, 2008 WL 819271, at *5 (S.D. Ohio Mar. 25, 2008).  The Social Security Administration's regulations reflect this requirement: "After we review *all* of the evidence relevant to your claim, including medical opinions, we make findings about what the evidence shows."  20 C.F.R. § 404.1527(c) (emphasis added).

  When there is a dispute over the medical opinion of claimant's treating physician, there are additional procedures that must be followed.  The Social Security Administration's regulations provide: "If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will *weigh all of the evidence* and see whether we can decide whether you are disabled based on the evidence we

have." 20 C.F.R. § 404.1527(c)(2) (emphasis added).  The regulation also provides that

"[r]egardless of its source, [the ALJ] will evaluate every medical opinion [he] receive[s]."  20

C.F.R. § 404.1527(d).

> Generally, [the ALJ must] give more weight to opinions from [claimant's] treating
> sources, since these sources are likely to be the medical professionals most able to
> provide a detailed, longitudinal picture of [claimant's] medical impairment(s) and
> may bring a unique perspective to the medical evidence that cannot be obtained from
> the objective medical findings alone or from reports of individual examinations, such
> as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2); *accord Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004)

(stating "an ALJ must give more weight to opinions from treating sources.").

> The regulations also define "treating source":

> Treating source means your own physician...who provides you, or has provided you,
> with medical treatment or evaluation and who has, or has had, an ongoing treatment
> relationship with you. Generally, we will consider that you have an ongoing
> treatment relationship with an acceptable medical source when the medical evidence
> establishes that you see, or have seen, the source with a frequency consistent with
> accepted medical practice for the type of treatment and/or evaluation required for
> your medical condition(s).

20 C.F.R. § 404.1502.  Dr. Brown was Ritchie's family physician (Tr. at 271) and the record

shows that Ritchie saw Dr. Brown on an ongoing basis for at least the period spanning 2000 to

2006.  (*See* Tr. at 138-43, 149-50, 168-69, 213-22) (showing numerous occasions when Ritchie

saw Dr. Brown for a variety of different medical conditions).  Given Ritchie's long history of

seeing Dr. Brown for medical issues, including her cervical radiculopathy and the associated

degenerative disc disease, Dr. Brown falls squarely within the regulations' definition of a

"treating source" under 20 C.F.R. § 404.1502.

> If a treating source's opinion "is well-supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in

-16-

[the] case record" then it is given "*controlling* weight."  20 C.F.R. § 404.1527(d)(2) (emphasis

added).  In contrast, if the treating source's opinion *is* inconsistent with other substantial

evidence then the ALJ must consider the following factors to determine the weight given to the

opinion: length of the treatment relationship and frequency of examination; nature and extent of

the treatment relationship; supportability; consistency; specialization; and any other factors the

claimant brings to the ALJ's attention.  20 C.F.R. § 404.1527(d); *Wilson v. Comm'r Soc. Sec.*,

378 F.3d 541, 544 (6th Cir. 2004).

Most importantly, the regulation contains "an important procedural safeguard," providing

that the Social Security Administration "will *always* give good reasons in our notice of

determination or decision for the weight we give your treating source's opinion."  20 C.F.R. §

404.1527(d)(2) (emphasis added); *Wilson*, 378 F.3d at 547.  This is a  "clear procedural

requirement" that:

> a decision denying benefits 'must contain specific reasons for the weight given to the
> treating source's medical opinion, supported by the evidence in the case record, and
> must be sufficiently specific to make clear to any subsequent reviewers the weight
> the adjudicator gave to the treating source's medical opinion and the reasons for that
> weight.'

*Wilson*, 378 F.3d at 544 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996)).  The

purpose behind this requirement is two-fold:

> 'The requirement of reason-giving exists, in part, to let claimants understand the
> disposition of their cases,' particularly in situations where a claimant knows that his
> physician has deemed him disabled and therefore 'might be especially bewildered
> when told by an administrative bureaucracy that she is not, unless some reason for
> the agency's decision is supplied.'  The requirement also ensures that the ALJ
> applies the treating physician rule and permits meaningful review of the ALJ's
> application of the rule.

*Wilson*, 378 F.3d at 544 (citations omitted).

-17-

Even when substantial evidence otherwise supports the ALJ's decision, the failure to set forth "good reasons" for the weight accorded to a treating source's opinion, as required by 20 C.F.R. § 404.1527(d)(2), mandates reversal and remand to the ALJ.  *Wilson*, 378 F.3d at 544. Although "a different outcome on remand is unlikely," to hold such failure harmless would "afford the Commissioner the ability to violate the regulation with impunity and render the protections promised therein illusory."  *Id.* at 546.

Here, the ALJ briefly addressed Ritchie's contention that she meets the criteria of Listing 1.04(A), finding that she did have the required "cervical radiculopathy with known cervical degenerative disc disease and degenerative joint disease."  (Tr. at 19).  Nonetheless, the ALJ rejected application of Listing 1.04(A) based on Dr. Timperman's report of "full range of cervical spine and shoulder joint motion."  *Id.*  The ALJ does not elaborate on why he apparently gave Dr. Timperman's report controlling weight.  Nor does the ALJ explain why he apparently gave no weight to numerous reports of limited range of spinal motion by Dr. Brown and others, observed subsequent to Ritchie's meeting with Dr. Timperman; indeed, the ALJ does not even mention the *existence* of these reports.

This is not to say that the ALJ would necessarily have been in error to disregard the reports of limited spinal motion and to instead credit Dr. Timperman's report of full range of spinal motion.  The ALJ could have credited Dr. Timperman's report based on factors such as specialization, consistency, or supportability, and rejected Dr. Brown's report for lack of one or more of these factors.[2]  In the end however, the Court's review of the weight accorded to Dr.

_____

[2] However, such a determination would probably require an explanation of why the ALJ chose to credit Dr. Brown's report regarding Ritchie's residual functional capacity, while failing to credit Dr. Brown's reports of limited range of spinal motion.

Brown's opinion is rooted in the *actual* basis set out by the ALJ, not hypothetical bases.

Dr. Brown was Ritchie's treating physician and had an extensive, ongoing treatment relationship with her.  He and others observed that Ritchie had limited spinal motion on numerous occasions, subsequent to Dr. Timperman's report.[3]  The ALJ was bound by regulation to accord a specified weight to Dr. Brown's opinion as Ritchie's treating source, and if not, to adequately explain his reasoning on the basis of the factors set forth in the regulation; the ALJ failed to give that explanation.  This is a prime example of why the "good reasons" requirement exists to begin with.  Both Ritchie and the Court are left without any clue as to why the ALJ did not address Dr. Brown's report.  Ritchie may be understandably bewildered and the Court is not given a record adequate to permit meaningful judicial review of the ALJ's application of the treating physician rule.

The ALJ's failure to give "good reasons" for the weight accorded to Dr. Brown's report is not harmless error.  The ultimate issue in this case is whether Ritchie is disabled for purposes of receiving Social Security benefits.  Ritchie would qualify as disabled under the regulations if she meets Listing 1.04(A), which the ALJ determined she did not meet on the basis of Dr. Timperman's report.  If the ALJ improperly credited Dr. Timperman's report rather than Dr. Brown's reports, or if the ALJ was not aware of Dr. Brown's reports and thus did not base his decision on the record as a whole, it would be error on the part of the ALJ.  The ALJ's failure to specify "good reasons" for the weight accorded Dr. Brown's reports renders such a

---

[3] The ALJ's failure to address the reports of limited range of spinal motion is especially troubling given that Dr. Timperman's report was based on early observations, completely disregarding any possibility that Ritchie's medical condition may have changed.  This raises at least a reasonable inference that the ALJ did not address Dr. Brown's reports because he was not even aware of them.

determination by this Court impossible.  Therefore, the Court reverses the decision of the ALJ and remands for an enumeration of "good reasons" sufficient to satisfy the dictates of *Wilson* and 20 C.F.R. § 404.1527(d).

### III.  CONCLUSION

The ALJ's determination of Ritchie's residual functional capacity is based on substantial evidence, namely, the residual functional capacity report completed by Ritchie's own treating physician, Dr. Brown.  Contrary to the Report and Recommended Decision of the MJ, the ALJ was not required to consult expert medical testimony to assist with the determination of Ritchie's residual functional capacity.  Likewise, the ALJ did not fail to consider Ritchie's obesity and no party raised that issue before the ALJ or the MJ.  Therefore, the MJ's stated bases for reversal and remand are not founded in existing law and the Court SUSTAINS Defendant's objections and REJECTS the MJ's recommendations.

However, Ritchie raised and continues to advocate a meritorious argument that the MJ neglected to address.  The ALJ failed to set forth "good reasons" for the weight accorded Dr. Brown's reports of limited range of spinal motion, as required by the Social Security Administration's own regulations.  That determination bears directly on the critical issue of whether Ritchie meets Listing 1.04(A) and is thus considered disabled without further analysis.  By law, the ALJ's failure to set forth "good reasons" mandates reversal and remand.  Therefore, pursuant to 42 U.S.C. § 405(g), the decision of the ALJ is REVERSED and REMANDED to the Agency for further proceedings consistent with this Opinion.

IT IS SO ORDERED

February 19, 2009      s/ Christopher A. Boyko
Date           CHRISTOPHER A. BOYKO
            United States District Judge